UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
RALANDA JENNINGS,                                    :

                    Plaintiff,            :

                -against-                        :

CAROLYN W. COLVIN, ACTING                            :
COMMISSIONER OF SOCIAL SECURITY,
                                               :
                Defendant.
------------------------------------------------------X

**MEMORANDUM AND ORDER**

14-CV-2676 (KNF)

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

      Ralanda Jennings, commenced this action against the Commissioner of Social Security, seeking review of an administrative law judge's ("ALJ") decision, dated November 27, 2012, finding her ineligible for disability insurance benefits ("DIB"), pursuant to Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401-434. The ALJ's decision became final on January 31, 2014, when the Appeals Council denied Jennings's request for review. This action followed. Before the Court are the parties' respective motions for judgment on the pleadings, made pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

      Jennings alleged disability beginning July 27, 2009. An administrative hearing was held, on October 25, 2012, at which Jennings testified and was represented by counsel. The issue before the ALJ was whether Jennings is disabled. The ALJ determined that Jennings: (1) last met the SSA's insured status requirement on September 30, 2012; (2) did not engage in substantial gainful activity after July 27, 2012; (3) through September 30, 2012, had the severe impairments of arthropathy in the left shoulder, status post left shoulder rotator cuff repair, arthropathy in the right knee, status post right knee meniscus repair, lumbago, obesity, HIV+, migraines and affective disorder; (4) did not have an impairment or combination of impairments

that meet or medically equal the severity of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1"); (5) had the residual functional capacity to perform sedentary work, except that she was restricted to simple one/two-step tasks requiring only occasional contact with others, she could sit for up to six hours and stand or walk for up to two hours, during an eight-hour day, lift and carry objects weighing a maximum of 10 pounds and push or pull to her lifting/carrying capacity, she had the ability, on a sustained basis, to understand, remember and carry out simple instructions, make simple work related decisions, respond appropriately to supervisors and co-workers and deal with changes in a work setting that did not require more than occasional contact with others; (6) does not have past relevant work; (7) was born in 1965; and (8) has at least a high school education and is able to communicate in English. The ALJ also found that transferability of job skills is not material to the determination of disability because, using the Medical-Vocational Rules as a framework supports a finding that she is not disabled, regardless of whether she has job skills that are transferable. The ALJ determined that, considering Jennings's age, education, work experience and residual functional capacity, jobs exist in significant numbers in the national economy that Jennings could have performed. The ALJ concluded that Jennings was not disabled at any time from July 27, 2009, through September 30, 2012, the date last insured.

*Plaintiff's Contentions*

Jennings contends that the ALJ erred by failing to evaluate properly the opinions of her treating sources, Dr. Thomas Virey ("Dr. Virey") and Physician's Assistant Julius Nwosu ("Nwosu"), when determining her residual functional capacity. She asserts that the ALJ failed to document the length of the treatment relationship, and inconsistencies exist within the body of the report of one-time examining physician, Dr. Lavonna Banker ("Dr. Banker"). For example,

Dr. Banker indicated that she observed Jennings "not using a device for ambulation," but the records from FEGS show that Jennings "was using a cane and wearing a back brace." According to Jennings, the ALJ should have given "great, if not controlling weight" to her treating sources because their "opinions are consistent with their own records as well as the clinical observations of the one-time examiner."

Jennings asserts that the ALJ's credibility assessment contains a "significant number of inaccuracies and mischaracterizations regarding Plaintiff's testimony and her statements in her application materials." For example, the ALJ found that Jennings's migraines were treated effectively with medication within 20-30 minutes, but she testified that when she experiences a migraine, she has to lie down for four or five hours, and she reported in her Function Report-Adult that her medication took effect within 20-30 minutes and her migraines caused her to be unable to do anything but to lie down and relax. Next, the ALJ found that Jennings's credibility was undermined by her self-described daily activities, which were at odds with the allegations of disabling functional limitations, which is "untrue," because she reported in her Disability Report-Adult that "she gets help from her neighbor when getting dressed and her 11 year old daughter washes her back for her," and, sometimes, she needs help to take care of personal needs and grooming and that her children help her with everything. Jennings also asserts that the ALJ erred when he failed to obtain assistance from a vocational expert, because she suffers from significant non-exertional impairments.

*Defendant's Contentions*

The defendant contends that substantial evidence supports the ALJ's decision. According to the defendant, Jennings's left shoulder and right knee impairments do not meet the listing 1.02 of the impairments listed in Appendix 1, because they are the result of soft-tissue

injuries or arthritis, with no findings of a deformity, joint space narrowing, bony destruction or ankylosis of the affected joint, and she did not identify a left shoulder condition among the impairments that limit her ability to work. Moreover, her back impairments do not meet the listing 1.04 of the impairments listed in Appendix 1, because no evidence exists of nerve root compression, such as positive straight-leg raising, arachnoiditis or lumbar spinal stenosis, and no evidence exists that she was unable to walk without an assistive device or sustain a reasonable pace over a sufficient distance. The defendant asserts that substantial evidence supports the conclusion that, despite some pain caused by Jennings's knee injury, no extreme limitation results on her ability to walk or complete her daily activities. The defendant asserts that the ALJ's assessment, that Jennings had a mild limitation in her ability to perform daily living activities and maintain social functioning and a moderate limitation in her ability to maintain concentration, persistence or pace, without any episodes of decompensation of extended duration, was proper.

According to the defendant, the ALJ assigned little weight to her treating sources properly, because Dr. Virey's opinion was contradicted by opinions of other physicians and Nurse Practitioner Nwosu was not a "treating source" under the Social Security Administration's regulations. The ALJ determined Jennings's residual functional capacity properly, taking into consideration her obesity, migraines and HIV as well as her non-exertional limitations, giving Jennings "the benefit of the doubt" and limiting her to simple one/two-step tasks requiring only occasional contact with others. Moreover, the ALJ assessed Jennings's credibility properly because her subjective complaints, testimony about self-described activities and a wide array of vocational activities during the alleged period of disability, did not support generally her allegation that she was totally disabled. The defendant also contends that the ALJ relied

4

properly on the medical vocational guidelines.

*Legal Standard*

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

> A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
>
> Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted).

"Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (internal citations omitted).

To qualify for disability benefits, an individual must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A). The Social Security Administration's regulations establish a five-step process for determining a disability claim. See 20 C.F.R. §§ 404.1520(a)(4).

> If at any step a finding of disability or nondisability can be made, the [Social Security Administration] will not review the claim further. At the first step, the agency will find nondisability unless, the claimant shows that he is not working at a "substantial gainful activity." At step two, the [Social Security Administration] will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly

5

> limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the [Social Security Administration] assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the [Social Security Administration] to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.
>
> Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003) (internal citations omitted).

"[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (citations omitted). "Although the claimant bears the general burden of proving that he is disabled under the statute, 'if the claimant shows that his impairment renders him unable to perform his past work, the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform.'" Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002) (quoting Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)). Ordinarily, the Commissioner's burden is met "by resorting to the applicable medical vocational guidelines." Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999) (citation omitted). In considering work which exists in the national economy, the ALJ "will decide whether to use a vocational expert or other specialist." 20 C.F.R. §§ 404.1566(e).

> [T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines. A more appropriate approach is that when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused

solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the [Commissioner] must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.

Bapp v. Bowen, 802 F.2d 601, 603 (2d Cir. 1986).

*Application of Legal Standard*

Upon careful review of the record, the Court finds that the ALJ followed the five-step sequential analysis properly, when making the disability determination and committed no legal error. The Court finds further that the ALJ's findings are supported by substantial evidence.

The ALJ accorded treating sources little weight and explained, properly, the reasons for the weight given, namely, that their opinions were not supported by clinical findings or diagnostic test results and were contradicted by the progress notes and other evidence in the record showing that, more often than not, Jennings denied having symptoms and did not have significant clinical findings, except during the month leading to her right knee surgery. Moreover, Dr. Virey's statement concerning Jennings's limitations cannot be reconciled with her own testimony about her daily activities. The ALJ's failure "to document the length of the treatment relationship" is not a sufficient basis warranting relief.

The ALJ's credibility determination is proper. No inaccuracy exists and no mischaracterizations of the plaintiff's testimony and her statements occurred. The ALJ's finding, that Jennings's migraines were relieved with medication within 20-30 minutes, as she stated in her application, is not necessarily inconsistent with her testimony that she had to lie down when she had a migraine, and the ALJ did not credit Jennings's testimony entirely. Jennings' testimony about her daily activities was sufficient to undermine her allegations of total disability, even if she sometimes needed help with taking care of her personal needs, and the

7

ALJ determined properly not to credit Jennings's allegations of total disability.

Jennings's contention, that the Social Security Administration's regulations require the ALJ to consult a vocational expert, is erroneous. The use of a vocational expert is discretionary, and the ALJ found, properly, that Jennings's limitations were not significant. Thus, he made no error in relying on the medical vocational guidelines to determine whether jobs exist in significant numbers in the national economy that Jennings can perform.

## Conclusion

For the foregoing reasons: (1) the plaintiff's motion, Docket Entry No. 13, is denied; and (2) the defendant's motion, Docket Entry No. 15, is granted. The Clerk of Court is directed to close this case.

Dated: New York, New York
       February 6, 2015

SO ORDERED:

*Kevin Nathaniel Fox*
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE